# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KAREN M. ROBERTS, | : |
| Plaintiff, | : |
| v. | : C.A. No. 13-1779-LPS |
| BAYHEALTH MEDICAL CENTER, INC., | : |
| Defendant. | : |

## MEMORANDUM ORDER

Plaintiff Karen M. Roberts ("Roberts" or "Plaintiff") was employed as a Part-Time Nurse in the In-patient Rehabilitation Center ("Rehab Center") of the Milford Memorial Hospital ("Hospital"), a facility operated by Defendant Bayhealth Medical Center, Inc. ("Bayhealth" or "Defendant"), a non-profit corporation that owns and operates a healthcare system in Kent and Sussex Counties, Delaware. Roberts began her employment at the Hospital in 1988 and was terminated in February 2012.

Between 2003 and 2011, Roberts had several surgeries and other procedures resulting from a brain tumor, and at some point she came to be disabled (as that term is used in the applicable statute).[1] The Rehab Center requires nursing coverage 24-hours a day. In and around 2010 through 2012, Bayhealth transitioned from regularly scheduling nurses for eight-hour shifts

---

[1] *See, e.g.*, D.I. 123 at 3 (including among "Uncontested Facts agreed to by the Parties" that "Plaintiff is substantially limited in one or more major life activities, including, but not limited to, concentrating, seeing[,] speaking, thinking, processing information, remembering and sleeping").

1

to requiring Rehab Center nurses (full and part-time) to work 12-hour shifts.[2] Roberts requested to keep a regular schedule of three 8-hour daytime shifts (7 a.m. to 3 p.m.) every week, as what she contends would have been a reasonable accommodation necessary due to her disability. Bayhealth offered various accommodations, but none acceptable to Roberts, and eventually, in 2012, Bayhealth terminated Roberts. After seeking relief through federal and state administrative procedures, this lawsuit followed.

Now pending before the Court in this employment discrimination matter are: (1) Bayhealth's motion for summary judgment (D.I. 103); (2) multiple motions *in limine* ("MIL") filed by both parties as part of the proposed final pretrial order ("PTO") (D.I. 123); and (3) various issues relating to the forthcoming jury trial (scheduled to begin on September 8, 2015). The Court will resolve most of these disputes by this Memorandum Order. The parties should be prepared to discuss the remaining disputes at the pretrial conference ("PTC") to be held on Friday, August 28, 2015.

## MOTION FOR SUMMARY JUDGMENT

In her Amended Complaint (D.I. 22), Roberts alleges that Bayhealth, her former employer, violated her rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et. seq. ("ADA"), in two respects. In claim 1, she alleges that Bayhealth discriminated against her by failing to accommodate her disability by, among other things, refusing to make the reasonable accommodation of giving her a regular, part-time schedule consisting of three 8-hour day shifts (7 a.m. to 3 p.m.), sufficient to allow her to retain her benefits. (*See, e.g.*, D.I. 22 at ¶¶ 107-09)

---

[2]Whether and when this transition became complete is a matter of dispute between the parties.

In claim 2, she alleges that Bayhealth discriminated against her by terminating her employment as a nurse. (*See, e.g.*, *id.* at ¶¶ 110-12)

Bayhealth has moved for summary judgment with respect to both of Roberts' claims. (*See* D.I. 103) Bayhealth contends "there is no genuine issue of material fact that Plaintiff is not a qualified individual within the meaning" of the ADA. (D.I. 104 at 1) Further, in Bayhealth's view, "there is no issue of material fact that Bayhealth provided a reasonable accommodation to the extent required by law." (*Id.*) The Court disagrees with Bayhealth on both points.

The applicable legal standards are not in dispute. (*See* D.I. 104 at 11-12; D.I. 111 at 23) "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility

3

determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Contrary to Defendant's contention, the record taken in the light most favorable to Plaintiff contains sufficient evidence from which a reasonable jury could find that Roberts was a "qualified individual" within the meaning of the ADA. A two-part test is used to determine whether an employee is a qualified individual: (1) "the individual satisfies the prerequisites of the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.;" and (2) "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998).

Here, the dispute as to whether Roberts is qualified devolves largely into a dispute as to whether the ability to work a 12-hour shift is an "essential function" of her position as a Rehab Center nurse. "Whether a particular function is essential is a factual determination that must be made on a case-by-case basis [based upon] all relevant evidence." *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 148 (3d Cir. 1998) (en banc).

A job function may be considered essential for reasons including: (1) the position exists to perform that function; (2) there are a limited number of employees available among whom that function can be distributed; and (3) the function is highly specialized. *See* 29 U.S.C. § 1630.2(n)(1) & (n)(2). Evidence of whether a function is essential includes: (a) the employer's judgment; (b) the consequences of not requiring the incumbent to perform the function; and (c) the current work experience of incumbents in similar jobs. *See id.* at § 1630.2(n)(3).

On the record before the Court, just about each of these factors presents a genuine dispute

of material fact. For instance, Defendant's contention that "Plaintiff's requested shift would have left Bayhealth and its nurses unable to operate effectively as a team for four hours of the day, 3 p.m. to 7 p.m., compromising patient safety" (D.I. 103 at 14), cannot be accepted at this point in the proceeding. To the contrary, there is sufficient evidence in the record from which a reasonable jury could find that Bayhealth's nurses could operate effectively as a team at all times, including during the busy period of 3 to 7 p.m., with a combination of 4-, 8-, and 12-hour shifts, just as Bayhealth had done prior to 2012.

There are also genuine disputes of material fact as to whether another position for which Plaintiff was qualified – Part-Time Recovery Room Nurse Position – was open and available at the applicable date, which Plaintiff contends was June 29, 2011.

Nor does Defendant's repeated criticism that Plaintiff has not identified any other nurse who received regular 8-hour shifts after mid-2011 provide a basis for granting summary judgment. Whether or not the new shift requirement was uniformly and fairly applied to all nurses is a fact question – the answer to which is pertinent to (although not necessarily dispositive of) resolution of Plaintiff's claims. Plaintiff contends she was discriminated against based on her disability. She is not asserting a violation of her right to equal protection. Thus, if there was no other nurse whose disability required a reasonable accommodation in order to work the required number of hours, Plaintiff may still prevail on her ADA claims by showing that she (alone) was unlawfully discriminated against.

The record, taken in the light most favorable to Plaintiff, also contains sufficient evidence from which a reasonable jury could find that Defendant failed to provide a reasonable accommodation to Plaintiff. To show that Bayhealth breached its duty to provide a reasonable

5

accommodation, Roberts has to show: (1) Bayhealth knew about her disability (which is undisputed); (2) Roberts requested accommodations or assistance for her disability; (3) Bayhealth did not make a good faith effort to assist her in seeking accommodations; and (4) Roberts could have been reasonably accommodated but-for Bayhealth's lack of good faith. *See Taylor v. Phoneixville Sch. Dist.*, 184 F.3d 296, 311-12 (3d Cir. 1999).

Here, among other things, the parties vigorously dispute whether one or both engaged in the interactive process in good faith. Bayhealth insists it "made every attempt to accommodate Plaintiff so that she could continue to work at Bayhealth" and "tailored its accommodation to the limitations set forth in the June 27 Note" from Dr. Rutenberg, which expressly limited Plaintiff to 8-hour shifts but which did not expressly state that those shifts had to be 7 a.m. to 3 p.m. (D.I. 104 at 17) However, a reasonable jury could find that Bayhealth was not engaged in a good faith effort to reasonably accommodate Roberts' disability – based on, for example, internal Bayhealth emails expressing doubt as to Bayhealth's efforts,[3] nursing schedules showing the continuing presence of 8-hour shifts,[4] and Bayhealth's refusal to re-offer Roberts a part-time accommodation when she sought to accept it just 18 days after initially rejecting it. Moreover, while the June 27 Note from Dr. Rutenberg was silent on the specific 8-hour shifts Roberts needed, by the time

---

[3]*See, e.g.*, A407-09, 717-18 (Defendant's Reeves writing in February 2012, among other things, "We should make a concerted effort to get rid of the 8 hours! Since that is the goal of the department – the sooner the better. As long as we have any 8 hours shifts we are open to looking biased against Karen [Roberts]. Bias is expensive!").

[4]While Defendant asserts that "[t]he issue is not whether 8-hour shifts continued to appear on the schedule in March 2012; the issue is whether any nurse in Plaintiff's position exclusively worked 8-hour day shifts" (D.I. 117 at 2), a reasonable factfinder could draw the reasonable inference from the continued existence of 8-hour day shifts that the accommodation Plaintiff sought was reasonable.

6

Bayhealth received that note it knew from Roberts' own statements that she needed day shifts, and Bayhealth could have resolved any uncertainty as to Roberts' disability and how to accommodate it by requesting further information. In short, a reasonable jury could agree with Plaintiff that "Bayhealth's only offer within Roberts' restrictions for half of her prior job, without benefits, was unreasonable because it did not provide equal employment opportunity and was crafted so that she would not accept it." (D.I. 111 at 2)

In sum, a reasonable jury could find, by a preponderance of the evidence, that Roberts has adduced evidence proving each of the elements of each of her claims.[5] Accordingly, Bayhealth's motion for summary judgment (D.I. 103) is **DENIED**.[6]

## MOTIONS *IN LIMINE*

Consistent with the Scheduling Order (D.I. 13 ¶ 12), the parties incorporated their MILs and briefing on them in the PTO (D.I. 123). Having reviewed the briefing contained in the PTO, and the materials included with it, **IT IS HEREBY ORDERED** that:

---

[5]For example, a reasonable jury could find that Roberts has a disability (which is undisputed), and is qualified for the position in question (either with or without reasonable accommodation), yet she was terminated because of her disability. *See Gaul*, 134 F.3d at 580. A reasonable jury could further disbelieve Bayhealth's articulated reason for its termination decision or believe that invidious discrimination was instead a motivating cause for that decision (assuming these issues even need to be reached). *See id.*

[6]To the extent Bayhealth is seeking reconsideration (*see* D.I. 117 at 1 n.2) of the Court's grant-in-part of Roberts' request to extend the page limits and for expedited consideration (*see* D.I. 109, 110), Bayhealth's request is denied. Given the Court's Local Rules limiting opening briefs to 20 pages (a necessity given the Court's large docket), the Court denied Plaintiff's request to file a 40-page brief, although it did allow a 30-page brief – and, at the same time, *sua sponte* granted Defendant an additional five pages for its reply brief, giving both sides an adequate (but not overwhelming) amount of pages for briefing. Defendant did not request to exceed the 20-page limit for its opening brief. Moreover, given the state of the record, no amount of briefing would have persuaded the Court to grant the motion for summary judgment.

1. Plaintiff's MIL 1, to exclude the EEOC investigator's recommendation for closure and related materials, is **GRANTED**. Pursuant to Fed. R. Evid. 403, the risk of unfair prejudice and confusion of issues substantially outweighs any minimal probative value there might be in any evidence of administrative investigations, findings, or conclusions – issues that will be the prerogative of the jury to resolve at trial. *See Spruill v. Winner Ford*, 175 F.R.D. 194, 197 (D. Del. 1997). The Court's exclusion order applies to both EEOC and Delaware Department of Labor materials. *See generally Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1339 (3d Cir. 2002) (stating it is within trial court's discretion to admit or deny EEOC evidence at employment discrimination trial).

2. Plaintiff's MIL 2, to exclude the Position Description/Performance Review for the Recovery Room Nurse, is **DENIED**. While Defendant will be held to its judicial admission that Plaintiff was qualified for the part-time Recovery Room job, this does not render the job description irrelevant. Disputes as to the authenticity of the document can be resolved at trial.

3. Plaintiff's MIL 3, to exclude the testimony of Jessica Soja as irrelevant and unduly prejudicial, is **DENIED**. Soja was the successful candidate for the part-time Recovery Room nurse position to which Plaintiff contends she could have been reassigned. Hence, Soja's testimony – including about the timing of the process by which she applied and was hired for the position – are probative of material issues in this case, and the concerns of Rule 403 do not substantially outweigh this probative value.[7] In denying Plaintiff's motion, however, the Court

---

[7] In its summary judgment briefing, Defendant contends that Soja applied for the position of Part-Time Recovery Nurse on June 23, 2011, was interviewed on July 1 and again on July 4 or 5, and "[b]y July 7 or 8, 2011, Ms. Moore and others who interviewed Ms. Soja had selected Ms. Soja for the position, and Ms. Soja was prepared to take the position ***provided*** it could be combined with the not-yet-approved Day Surgery Position." (D.I. 117 at 7) (emphasis added)

8

does not intend to permit Defendant to attempt to circumvent the Court's denial of Defendant's motion to amend (or denial of its motion for reconsideration, discussed below).

4. Defendant's MIL 1, to exclude "irrelevant, prejudicial, and cumulative documents and testimony regarding Plaintiff's disability," is **DENIED**. Plaintiff will not be precluded from presenting testimony of her disability, just because this point (or at least aspects of it) is not contested. Moreover, the parties dispute damages, and evidence of the extent and nature of Plaintiff's disability may be pertinent to an appropriate damages analysis. (Plaintiff's experts have relied on this evidence in forming their opinions.) Defendant's concerns about the jury acting based on sympathy for Plaintiff will be addressed through a proper jury instruction, while Defendant's concerns about wasting time are addressed by the reasonable and appropriate time limits the Court will be imposing.[8]

5. Defendant's MIL 2, to preclude testimony regarding the inpatient rehabilitation schedules, is **DENIED**. The schedules are probative of at least the issues of how the inpatient rehabilitation unit was run; what shifts (and of what lengths of shifts) Plaintiff was assigned, desired, and potentially could have been given as an accommodation; and whether the ability to serve 12-hour shifts is an "essential function" of Plaintiff's position. The concerns of Rule 403 do not outweigh (much less *substantially* outweigh) the probative value of the schedules and

---

Defendant adds that "Ms. Moore received official authorization for the part-time Day Surgery position on or about July 26, 2011." (*Id.*) Merely to recite this time-line indicates that there are genuine disputes as to when the position was filled by Soja. Plaintiff takes the view that "the controlling date for determining whether a position is 'vacant' is the date that the employee asks for a reasonable accommodation, which was June 27," and further that Plaintiff applied for the advertised position on July 8. (D.I. 123 at 18)

[8]To the extent there remains a discovery dispute relating to Dr. Rutenberg's deposition (*see* D.I. 125), the parties should be prepared to address it at the PTC.

9

testimony about them. The Court will not dictate to the parties how many witnesses they may call, including on any particular topic, but will instead rely on the impact of the reasonable number of hours it is providing each side for its trial presentation to ensure that the parties present their cases in a reasonable and effective manner.

## OTHER TRIAL-RELATED ISSUES

**IT IS FURTHER ORDERED**, with respect to disputes presented in the PTO, as follows:

1. Buried within the PTO is Bayhealth's request for reconsideration of the Court's denial of Bayhealth's motion to amend its answer. (*See* D.I. 123 at 58, 60-61) A request for reconsideration must be filed by separate motion. *See* D. Del. LR 7.1.2(a) ("Unless otherwise ordered, all requests for relief shall be presented to the Court by motion."). More importantly, such a motion must be filed within 14 or at most 28 days of date of the order for which reconsideration is being sought. *See* D. Del. LR 7.1.5 ("If a party chooses to file a motion for reargument, said motion shall be filed within 14 days after the Court issues its opinion or decision . . . ."); Fed. R. Civ. Proc. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."). The Court denied Bayhealth's motion to amend on April 27, 2015. (*See* D.I. 121 at 27-32) Defendant's request for reconsideration, filed as part of the PTO on August 14, 2015, is obviously untimely.

Bayhealth's motion suffers from still more serious defects. First, it is not predicated on any of the grounds for which reconsideration could be granted – for example, that the Court has patently misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error not of reasoning but of apprehension, *see Schering Corp. v. Amgen,*

10

*Inc.*, 25 F. Supp.2d 293, 295 (D. Del. 1998), or that there has been an intervening change in controlling law, new evidence is available, or there is a need to correct a clear error of law or fact to prevent manifest injustice, *see Max's Seafood Café by LouAnn, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Instead, Bayhealth merely and improperly rehashes the same arguments the Court already rejected in denying the motion to amend. *See generally United States v. Veolia Env't N. Am. Ops., Inc.*, 2015 WL 4454905, at *2 (D. Del. 2015). Additionally, reconsideration is never warranted where it would not change the result. *See Schering Corp.*, 25 F. Supp.2d at 295. Here, the Court adheres to its reasoning and conclusion on the motion to amend, so reconsideration would not change the outcome.[9] Defendant is bound by ¶ 59 of its Answer, which was a judicial admission that Plaintiff was qualified for the Part-Time Recovery Room position. *See Donald M. Durkin Constr. Inc. v. City of Newark*, 2006 WL 2724882, at *6-7 (D. Del. Sept. 22, 2006).

2.  Each side is allocated a maximum of ***eleven (11) hours*** for its trial presentation. This case has always been scheduled for ***five-day jury trial***, the very number of days the parties requested. (*See* D.I. 11 ¶ 14; D.I. 13 ¶ 14) Because the jury is only available between 9 a.m. and 4:30 p.m. each day, and because it is necessary to give the jury a morning and afternoon break as well as lunch, the Court is usually able to get a maximum of six (6) hours of trial time with the jury each day. Factoring in time for jury selection, reading of preliminary and final jury instructions, and jury deliberations, this means that ***a five-day jury trial can involve no more***

---

[9]*See* D.I. 121 at 27-32 (Court stating, in part, "the information which the defendant now seeks to rely on to withdraw its two prior admissions is not new information to the defendant. Again, it's always been available and within the control and the potential knowledge of the defendant. Therefore, there is an insufficient showing of diligence by the defendant in obtaining this information earlier and in moving earlier and therefore Rule 16 is not satisfied.").

11

*than 10-12 hours of time for each side* to make its trial presentation.

In light of these realities, the requests set out by the parties in the PTO are entirely unreasonable. Roberts, while recognizing "[t]he case is scheduled for a 5 day trial," expresses a belief "that it will take *at least 35 hours* to present her case in chief *plus an additional 5 hours* for cross-examination time and time for openings and closings," and "[t]herefore, a longer trial *may* be necessary." (D.I. 123 at 58) (emphasis added) The trial envisioned by Plaintiff would take approximately three weeks to try – an amount of time the parties have never requested, that is grossly disproportionate to the number of issues in dispute, and which the Court's calendar would not anyway permit it to accommodate. Bayhealth's request, although not nearly as exaggerated as Roberts', is for "approximately 16 hours" for its case in chief, with presumably additional time for its opening, closing, and cross-examinations. (*Id.*)

Civil cases of even greater factual complexity than the instant case are regularly tried to verdict in this Court with each side being allocated no more than 12 hours for a one-week trial and no more than 25 hours for a two-week trial. Here, while the parties' views of the facts contrast sharply, a full and fair record to support each side can be made in the course of a one-week trial of the length that is typical in this Court. Accordingly, again, the Court has allocated eleven (11) hours per side for trial presentations.

3.  Jury selection will be held on Friday, September 4, 2015 at 9:30 a.m, allowing the trial to begin with opening statements on Tuesday, September 8, 2015 at 9:00 a.m. Trial will be held from 9:00 a.m. to 4:30 p.m. on Tuesday, September 8 through Friday, September 11, 2015. Should either side have time remaining thereafter, the Court will discuss with the parties whether trial will continue on September 14, 15, and/or 16 (in light of the Jewish holiday of Rosh

12

Hashanah, which begins on September 13 and may make jurors and/or witnesses unavailable).

4. Plaintiff's request that Mr. Himelein not be sequestered and be permitted to sit at counsel table (D.I. 123 at 59) is **DENIED**. Mr. Himelein is on Plaintiff's witness list (*id.* at 23) and Plaintiff evidently intends to call Mr. Himelein as a witness to testify regarding the parties' negotiations and whether one or both sides engaged in the ADA's interactive process in good faith, aiming for a resolution of their dispute. (*See* D.I. 117 at 10-12) (describing some of the evidence with which Himelein is involved) Plaintiff observes that "Mr. Himelein will not be trying the case" (D.I. 123 at 59) – from which it follows that there is no need for him to sit at counsel table. There is also no reason to treat him differently than other fact witnesses for sequestration purposes. Without the consent of Defendant (which from the PTO appears not to be forthcoming), the Court will not risk confusing the jury and unfairly prejudicing Defendant by allowing Mr. Himelein to simultaneously seem to serve as counsel and witness. *See generally* Model Rules of Prof'l Conduct 3.7 (Am. Bar Ass'n 2013) ("A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness.").

5. It is unclear which portions of Plaintiff's request for damages the parties believe are to be tried before the jury, and which are to be left for the Court to resolve following trial. The parties should be prepared to discuss their proposals with respect to damages at the PTC.

Wilmington, Delaware
August 25, 2015

HON. LEONARD P. STARK
UNITED STATES DISTRICT COURT